UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| White Eagle Cooperative Association, et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>Mike Johanns, Secretary of Agriculture, )<br>United States Department of Agriculture, )<br>)<br>Defendants. ) | Case No. 3:05-CV-0620-AS |

**MEMORANDUM, ORDER AND OPINION**

Now before the Court is Plaintiffs' motion for preliminary injunction or, in the alternative, for stay of final action of the U.S. Department of Agriculture ("USDA"). The plaintiffs contend that USDA issued a final decision and final rule on an "emergency" basis without following proper administrative procedures. They now ask the Court to enjoin the enforcement of that rule or to postpone the effective date of the final rule. The Court heard oral arguments on this matter on October 20, 2005. The issues have been fully briefed by the parties.

**I.  Background**

Dairy producers and dairy producer associations brought this suit to enjoin an interim amendment to the federal rules regulating the price of milk. These rules, called milk marketing orders, are part of a program enacted through the Agricultural Marketing Agreement Act of 1937 ("AMAA"), 7 U.S.C. 601 *et seq*. The program and its history are described in several judicial opinions, e.g., *Zuber v. Allen*, 396 U.S. 168, 183 (1969) and *Alto Dairy v. Veneman*, 336 F.3d 560 (7th Cir. 2003). Basically, milk sold for fluid consumption is more valuable than when it is

sold for other ends, such as to make cheese or butter.[1]  The program involves a regulatory scheme which fixes minimum prices that handlers must pay for raw milk from producers and provides for market-wide pooling of milk money among eligible producers.  This uniform minimum price is known as the "blend" or "pool" price.  Each farmer is entitled to receive this price, regardless of the use to which the milk is put.  The ultimate result is to reduce competition and raise producer prices.  *See Block v. Community Nutrition Institute*, 467 U.S. 340, 342 (1984).

Pursuant to the AMAA, the Secretary of Agriculture has issued different milk-marketing orders for different regions of the country.  *See Lamers Dairy, Inc. v. U.S. Dep't of Agriculture*, 379 F.3d 466, 469 (7th Cir. 1999).  This case involves the Mideast Order, which regulates milk-marketing in portions of Indiana, Ohio, Michigan, West Virginia, Kentucky, and Pennsylvania.  7 C.F.R. § 1033.2.

Generally, amendments to the provisions of a milk marketing order must be made through formal, on-the-record rulemaking.  7 U.S.C. §§ 608c(1) & (17); 7 C.F.R. §§ 900.3 & 900.1(j).  This process is to include public notice, an on-the-record hearing, a recommended decision by the Administrator, opportunity to comment on the proposed amendments, and a final decision by the Secretary.  7 C.F.R. §§ 900.1-13.  The final decision becomes effective only after two-thirds of the affected producers consent to its adoption as a rule through a referendum.  7 U.S.C. §§ 608c(8) & (9).  A recommended decision may be omitted "only if the Secretary finds on the basis of the record that due and timely execution of his functions imperatively and unavoidably requires such omission."  7 C.F.R. § 900.12(d).

---

[1]The milk is categorized according to its end use: milk intended for fluid consumption is categorized as Class I milk; while milk for yogurt, cheese, or butter is Class II, Class III, or Class IV milk.  7 C.F.R. § 1000.40(a)-(d).

In this case, several amendments to the Mideast Order were proposed in late 2004 and early 2005. The proposals included amendments (1) to forbid so-called "double-dipping," pooling milk on both the Mideast Order and a market order implemented by a state, (2) to tighten performance standards for supply plants, and (3) most relevant to this case, to lower "diversion" limits. *See* Milk in the Mideast Marketing Area; Notice of Hearing on Proposed Amendments, 70 Fed. 8043, 8044 (proposed February 17, 2005). A diversion limit is the maximum percentage of a producer's milk that can be sold to non-pool plants rather than to handler pool plants without being disqualified from the pool and thus from entitlement to the minimum blend price. *See* 7 C.F.R. § 1033.13). According to the defendants, the diversion amendment was proposed because the "excessive diversions of milk by a few produces to non-pool plants tends to lower the blend price available to all producers, inasmuch as non-pool plants are more likely to lower value uses." Def. Mem. in Opp. at 7.

USDA conducted a four-day evidentiary hearing on the proposals at which interested parties, including White Eagle Cooperative Association and others, submitted both testimony and documentary evidence. Milk in the Mideast Marketing Area, 70 Fed. Reg. at 43337-43338; Hearing Ex. 11, Plaintiffs' App. Doc. 16. Afterward, USDA received post-hearing briefs from interested parties, including White Eagle. Milk in the Mideast Marketing Area, 70 Fed. Reg. at 43340. The Administrator then issued a tentative decision adopting the producers' proposals. He stated that "[a]ssociating more milk [with the pool] than is actually part of the legitimate reserve supply of the pooling handler unnecessarily reduces the potential blend price paid to dairy farmers who regularly and consistently service the market's Class I needs." Milk in the Mideast Marketing Area, 70 Fed. Reg. at 43341.

The Administrator omitted the issuance of a recommended decision for additional comments, and instead issued a tentative decision for immediate submission to a referendum. He stated that an "emergency marketing condition[]" existed. Milk in the Mideast Marketing Area, 70 Fed. Reg. at 43341. That condition was purportedly the "unwarranted erosion" of the blend prices "received by producers who are regularly and consistently serving the Class I needs of the Mideast marketing area" as a result of the "the lack of appropriate limits on the diversion of milk." *Id*.

At the same time, the Administrator invited public comment on the tentative decision, 70 Fed. Reg. at 43335, 43335, and USDA has since received those documents. Declaration of David Z. Walker, ¶ 4.

USDA announced that the amended milk order was approved by producers in the referendum and published the final rule to take effect beginning October 1, 2005. Interim Order Amending the Order, 70 Fed. Reg. 56113 (2005). White Eagle Cooperative Federation, et al., and National All-Jersey, filed exception to the interim decision. Pl. Mem. Appendix, Tabs 18-20. The terms of the Interim Final Rule carry the weight of law and govern the marketing of milk in the Mideast Order today.

USDA may still determine that those comments warrant changes to the interim rule before it is issued in final form, then it will issue a final decision reflecting those changes, and will submit that decision to another producer referendum before the rule is issued in final form. Declaration of David Z. Walker, ¶ 5.

## II.  Discussion

"A preliminary injunction is an extraordinary remedy intended to preserve the status quo

until the merits of a case may be resolved." *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001).  To obtain a preliminary injunction, the plaintiffs must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) absent injunctive relief, they will suffer irreparable harm; and (4) the injunction will not harm the public interest.  *Joelner v. Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).  "If the movant can meet this threshold burden, then the inquiry becomes a "sliding scale" analysis where these factors are weighed against one another."  *Id*. (citations omitted).  Under this sliding scale analysis, the greater the plaintiff's likelihood of success on the merits, the less the balance of harms must weigh in his favor.  *See AM General Corp. v. Daimler Chrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).  If, however, the movant cannot show at least a "greater than negligible chance of winning," no injunction may be issued.  *Id*. (citing *Washington v. Indiana High Sch. Athletic Ass'n*, 181 F.3d 840, 845 (7th Cir. 1999).  Applying these standards, the court will address the plaintiffs' motion.

**Success on the Merits**

Two issues must be evaluated to determine the plaintiffs' likelihood of success on the merits: (1) whether USDA improperly issued the final decision by omitting the recommended decision; and (2) whether the agency employee who issued the decision had authority to do so.  The Court addresses both arguments in turn.

    1.  Whether USDA improperly issued the final decision

The plaintiffs' first claim is that there were no "emergency circumstances" which justified the omission of the recommended decision.  A rule may be finalized without a recommended decision "only if the Secretary finds on the basis of the record that due and timely execution of

[the Secretary's] functions imperatively and unavoidably requires such an omission." 7 C.F.R. § 900.12(d). A careful examination of the language of this regulation is necessary to evaluate the plaintiffs' claim.

There is no real dispute about the first two elements of the regulation: 1) that the Secretary made a finding that an omission was required and 2) that the Secretary's finding was made "on the basis of the record."[2] The real dispute is over whether "due and timely execution of [the Secretary's] functions imperatively and unavoidably requires such an omission." The plaintiffs essentially ask the court to find that no "emergency" existed.

The parties disagree on the standard this Court should use when reviewing the Secretary's omission of the recommended decision. The plaintiffs, citing *Zhang v. Slatterly*, 55 F.3d 732, 744 (2nd Cir. 1995), state that exceptions to ordinary APA procedures "should be narrowly construed and only reluctantly countenanced" by a reviewing court. Plaintiffs also cite *American Federation of Government Employees v. Block*, 655 F.2d 1153, 1157 fn. 6 (D.C. Cir. 1981), which held that "administrative agencies should remain conscious that such emergency situations are indeed rare and that courts will examine closely proffered rationales justifying the elimination of public procedures." The defendants, on the other hand, state that this court should a apply the highly deferential "arbitrary and capricious" standard and the "substantial evidence" test pursuant to 5 U.S.C. § 706(2). Under those standards, "agency actions are valid as long as the decision is supported by a 'rational basis,'" and the court's "sole task is to determine 'whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear

---

[2]Plaintiffs clearly dispute that the proper findings were not made and that the record does not adequately support the omission of the recommended decision, but those arguments go to the third element and not whether the Secretary's finding were made "on the basis of the record."

error of judgment.'" *Pozzie v. U.S. Dep't of Housing and Urban Dev.*, 48 F.3d 1026, 1029 (7th Cir. 1995) (citations omitted). Clearly, the standard applied will have a significant impact on the plaintiffs' likelihood of success on the merits.

      The Court is persuaded that the more deferential arbitrary and capricious standard is appropriate. The Supreme Court has described the federal milk-marketing regime as a "labyrinth." *Zuber v. Allen*, 396 U.S. 168, 172 (1962). The Seventh Circuit recently acknowledged this complexity, stating that "[a] court's deference to administrative expertise rises to a zenith in connection with the intricate complex of regulation of milk marketing. Any court is chary lest its disarrangement of such a regulatory equilibrium reflect lack of judicial comprehension more than lack of executive authority." *Lamers Dairy, Inc. v. U.S. Dep't. of Agriculture*, 379 F.3d 466, 473 (7th Cir. 2004) (quoting *Blair v. Freeman*, 370 F.2d 229, 232 (D.C. Cir. 1966)). The plaintiffs argue that the Court should not give deference to the agency action here, because it was a matter of procedure and not a matter of substance. That is clearly wrong. The decision to omit the recommended decision was based on an assessment of milk market conditions and the effect of diversions on those conditions. This assessment was undoubtedly a substantive assessment and seems to be precisely the type of decision that requires agency expertise. The plaintiffs cannot simultaneously ask the Court to evaluate the proffered reasons for the omission, declare them inadequate, and ignore the agency's expertise in making those determinations.

      The language of the regulation allowing an omission also supports this position. The regulation makes it clear that the Secretary's *finding* is the key to justifying an omission. The regulation could easily say that the decision must be made upon a finding of "good cause," as

7

other closely related regulations do.  Instead, the regulation requires only that the finding be made "on the basis of the record" – a standard that seems very similar to an arbitrary and capricious standard.

Additionally, the Court finds it noteworthy that the authority cited by plaintiffs (*Zhang* and *Block*) does not involve the federal milk marketing regime in any way.  *Cf. Gore Inc. v. Espy*, 87 F.3d 767, 772 (5th Cir. 1996) (applying the "arbitrary and capricious" standard as outlined in 5 U.S.C. § 706(2) to a decision by USDA under the milk marketing provisions of the AMAA).  As the Seventh Circuit made clear in *Lamers*, the complexity of the milk marketing regulations requires special deference to administrative expertise.  Therefore, the Court must review the agency decision to determine if it is supported by a "rational basis," and "whether there has been a clear error of judgment.'"

This will be a difficult burden for the plaintiffs to carry.  It does not appear, at this stage of the proceedings, that they have a great chance for success.  They do not dispute that excess diversions were eroding the blend price, only that the extent of that erosion is not enough to justify an emergency ruling.  Pl. Mem. in Supp. at 14.  That argument comes very close to asking this Court to substitute its judgment for that of the agency's – something the Court is not permitted to do.  *See Heartwood v. U.S. Forest Service*, 230 F.3d 947, 953 (7th Cir. 2000).  It also appears that hearing testimony supports the Administrator's determination and demonstrates that the cost to producers from the price erosion was significant.

2.  Whether the agency employee had authority to issue the rule

The plaintiffs' second claim is that the Administrator did not have authority to issue the interim decision and emergency rule.  The term "Secretary" is defined by the agency's

8

regulations to include both the Secretary himself and "any officer or employee of the [USDA] to whom authority has heretofore been delegated, or to whom authority may hereafter be delegated to act for the Secretary." 7 C.F.R. § 900.2. Furthermore, 7 U.S.C. § 6912(a)(1) and 7 C.F.R. §§ 2.3, 2.79(a)(8)(viii) demonstrate that the Administrator was in fact delegated authority to act for the Secretary in matters concerning milk marketing regulation. Read together, these provisions show that the Administrator was properly vested with authority to issue the interim decision in this case. The plaintiffs have failed to demonstrate a likelihood of success on the merits on this claim.

In sum, the plaintiffs' likelihood of success on the merits is, at best, only slightly better than negligible. This is especially true in light of the deference that must be given to administrative expertise in this area. Therefore, the other factors must weigh greatly in the plaintiffs' favor for them to succeed. As the analysis below will demonstrate, however, those factors weigh heavily against the plaintiffs. So much so that even if plaintiffs' likelihood of success on the merits were greater, they would still not be entitled to a preliminary injunction.

**Adequate Remedy at Law**

The defendants declined to discuss this factor in their briefs, and from that the Court will assume they concede that plaintiffs do not have an adequate remedy at law. The plaintiffs contend that damages suffered as a result of being disqualified from participation in the Mideast Milk Order are both incalculable and unrecoverable and, as a result, they have no adequate remedy at law.[3] As outlined below, however, any harm to be suffered by the plaintiffs is purely

---

[3]This is a curious argument to advance in light of plaintiffs' arguments that the monetary harm they will suffer is much greater than the monetary harm that the defendant producers will suffer.

speculative. As such, the plaintiffs have not made the necessary tripartite threshold showing, even if this factor has been satisfied.

### Irreparable Harm

Finding that the plaintiffs will be irreparably harmed if the injunction is not granted is a threshold requirement for granting a preliminary injunction. *FoodComm Int'l v. Berry*, 328 F.3d 300, 304 (7th Cir. 2003). Plaintiffs have failed to show that they will be irreparably harmed absent injunctive relief, and this alone is sufficient to deny their motion. The plaintiffs offer only one sentence in their supporting brief to demonstrate irreparable harm. They state, "[i]f plaintiffs are denied injunctive relief, they will never be able to recover the revenues lost by the improperly issued final rule." Any loss that may be suffered by the plaintiffs is purely speculative, however.

The plaintiffs argue that the interim rule will make it more difficult for a producer to qualify its milk under the Mideast Order, Berby Decl., ¶ 6, and that, if a producer is disqualified, it could lose a significant amount of money per hundredweight by virtue of its inability to obtain the blend price. Jacoby Decl., ¶ 10. Plaintiffs fail to present any evidence, however, that any of their member producers have actually been unable to pool their milk on the Mideast Order. That omission is fatal. It is simply not enough to show the harm plaintiffs *might* suffer *if* they are prevented from pooling their milk on the Mideast Order. As the Seventh Circuit has stated, "speculative injuries do not justify this extraordinary remedy [a preliminary injunction]." *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005).

### Public Interest

It is somewhat difficult to discuss the milk marketing scheme in terms of the interest of

the general public.  As Judge Posner noted in *Alto Dairy*, "milk price discrimination is intended to redistribute wealth from consumers to producers of milk."  *Alto*, 336 F.3d at 563.  He called the alleged justification for the scheme – the tendency of dairy farmers to destroy their business through intense competition – "almost certainly spurious."  *Id*.  What is more certain is that the scheme was intended to and in fact does benefit dairy producers.  Those producers affected by the rule in question voted overwhelmingly in favor of its passage.  Even if these relatively few plaintiffs were to suffer a greater economic impact than the other producers, a simple utilitarian argument weighs heavily against the plaintiffs.  It seems reasonable to conclude that the purpose of the milk marketing scheme is to maximize the benefit to the largest number of producers, rather than to minimize a potential negative impact on a handful of producers.

    Finally, the interim rules are already in place.  Presumably, those in the industry who are affected by the rules have organized their business in compliance with these rules.  To roll back the interim rules now would negate the effort and expense involved in that compliance.

    In sum, the Court must evaluate the effect of a preliminary injunction on all of the producers, not just the plaintiffs and defendants in this case.  The plaintiffs do not dispute that the blend price was being eroded.  The Court will not benefit this small group of plaintiffs to the detriment of a much greater number of producers.

### III.  Conclusion

    For the foregoing reasons, plaintiffs motion for preliminary injunction or, in the alternative, for stay of final action is **DENIED**.  **SO ORDERED.**

**Date: October 28, 2005**                                               **S/ ALLEN SHARP**
                                                                     **ALLEN SHARP, JUDGE**
                                                                     **UNITED STATES DISTRICT COURT**