**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **WHITE EAGLE COOPERATIVE ASSOC.,** | ) | |
| **DEAN MARTIN d/b/a CRD DAIRY FARMS,** | ) | |
| **ERIE COOPERATIVE ASSOCIATION, INC.,** | ) | |
| **FAMILY DAIRIES USA, NATIONAL ALL-** | ) | |
| **JERSEY, INC., LANCO DAIRY FARMS** | ) | |
| **COOPERATIVE, CENTRAL EQUITY MILK** | ) | |
| **COOPERATIVE, INC., and CONTINENTAL** | ) | |
| **DAIRY PRODUCTS, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **3:05-CV-620 AS** |
| | ) | |
| **MIKE JOHANNS, Secretary of Agriculture,** | ) | |
| **United States Department of Agriculture, and** | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **AGRICULTURE** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DAIRY FARMERS OF AMERICA, INC.,** | ) | |
| **MICHIGAN MILK PRODUCERS ASSOC.,** | ) | |
| **INC., NFO, INC., LAND O'LAKES, INC.,** | ) | |
| **DAIRYLEA COOPERATIVE INC., and** | ) | |
| **DEAN FOODS COMPANY** | ) | |
| | ) | |
| **Intervenors/Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on various dispositive motions filed by the parties.

Specifically, this Court considers the following motions: (1) Defendants Mike Johanns,

Secretary of the United States Department of Agriculture ("Secretary") and the United States

Department of Agriculture's ("USDA" or "agency") (collectively "Government Defendants")

Motion to Dismiss or in the Alternative Motion for Summary Judgment (Docket No. 101)

filed on July 21, 2006; (2) Intervenor/Defendant Dean Foods Company's Motion for

Summary Judgment (Docket No. 110) filed on October 2, 2006; (3) Intervenor/Defendants

Dairy Farms of America, Dairylea Cooperative, Inc., Land O'Lakes, Inc., Michigan Milk

Producers Association, Inc., and NFO, Inc.'s (collectively, with Dean Foods Company,

"Intervenor Defendants") Motion for Summary Judgment (Docket No. 113) filed on October

2, 2006; and (4) Plaintiffs White Eagle Cooperative Association, Dean Martin d/b/a CRD

Dairy Farms, Erie Cooperative Association, Inc., Family Dairies USA, National All-Jersey,

Inc., Lanco Dairy Farms Cooperative, Central Equity Milk Cooperative, Inc., and Continental

Dairy Products, Inc.'s (collectively "plaintiffs") cross-motion for Summary Judgment on

Count I (Docket No. 118) filed on November 7, 2006.  Because Defendant Dean Foods and

the Intervenor Defendants rely on and incorporate the Government Defendants' Motion for

Summary Judgment, including both the statement of material facts and certain legal

arguments, all motions filed by all Defendants (collectively "Defendants") are addressed

simultaneously.  Oral arguments were heard on these motions in South Bend, Indiana on

March 9, 2007, and the issues have been fully briefed.

## I. STATEMENT OF FACTS

This case concerns a milk marketing order promulgated under the Agricultural

Marketing Agreement Act ("AMAA").  The marketing system governing many dairy farmers

2

("producers") and milk handlers is extremely intricate, causing one appellate court judge to remark, "the 'milk program' is exquisitely complicated …. The milk problem is so vast that fully to comprehend it would require an almost universal knowledge ranging from geology, biology, chemistry and medicine to the niceties of the legislative, judicial and administrative processes of government." Queensboro Farms Products v. Wickard 137 F.2d 969, 974-75 (6th Cir. 1943).

> The basic idea behind the milk marketing scheme is as follows:
>
> federal milk regulation may be perhaps most easily understood by remembering one principle: all federally regulated Grade A milk is treated equally. Regardless of whether it becomes the finest cream or the lowliest milk powder, the AMAA provides that the dairy farmer will receive the same minimum price for the farmer's milk.

Lois Bonsal Osler, *An Overview of Federal Milk Marketing Orders*, 5 San J Ag. LRev. 67, 68 (1995). Fortunately, beyond the above description, this Court need not delve into the intricacies of the milk marketing scheme, except to note that the minimum price paid to dairy farmers is regulated and governed by regional Milk Marketing orders, which are promulgated by the USDA. *See* Alto Dairy v. Veneman, 336 F.3d 560, 562-65 (7th Cir. 2003) (providing a thorough summary of the federal scheme regulating the price of milk and, in particular, the Mideast region of the system).

The relevant facts in this case are as follows: on February 17, 2005 the USDA published a hearing notice in the *Federal Register*, scheduling a hearing in Wooster, Ohio

to convene on March 7, 2005 (Pl. Br. 91 at 14), *see also* 70 Fed. Reg. 8043 (Feb. 17, 2005); 70 Fed. Reg. 10337 (Mar. 3, 2005).  The hearing notice explicitly stated that employees of the Office of the Market Administrator of the Mideast Milk Marketing Area would be participating in the decision-making process. (Pl. Br. 91 at 14). S*ee also* 70 Fed. Reg. 8043 (Feb. 17, 2005).  The salaries of the employees of the Mideast Milk Marketing Area ("Dairy Program employees") are indirectly paid by producers, who are charged a fee, which then goes into a pool out of which the Market Administrator pays the salaries of Dairy Program employees (Pl. Br. 118, 13-14)

During the March, 2005 hearing, the plaintiffs actively participated and representatives of the cooperative testified. (Pl. Br. 91 at 14).  Four months later, on July 17, 2005 the USDA published a tentative partial decision.  70 Fed. Reg. 43335.  Then on September 26, 2005 the USDA announced that the order had been approved by a referendum of eligible producers and was published on October, 1, 2005. 70 Fed. Reg. 56113.

On September 26, 2005, the plaintiffs sent a letter to the USDA alleging that Dairy Program employees who work for the Mideast Milk Marketing Area had a pecuniary interest in the proceeding (Pl. Br. 91 at 17).  The final partial decision was published on January 23, 2006. 71 Fed. Reg. 3435 (2006).  Later that same year, plaintiffs brought the present action.

## II.  STANDARD OF REVIEW[1]

A.   SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact, the trial court has properly construed the claims, and the moving party is entitled to judgment as a matter of law. Lockwood v. American Airlines Inc., 107 F.3d 1565, 1576 (Fed. Cir. 1997). *See also* Nebraska v. Wyoming, 507 U.S. 584, 590 (1993); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Nucor Corp. v. Aceros Y Maquilas De Occidente, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact. Celotex, 477 U.S. at 323.  Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990); Schroeder v. Lufthansa

---

[1] For purposes of the standards of review, Defendants argue that if the Court determines that it possesses subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), then the Court should consider dismissal of the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative, enter summary judgment in favor of the pursuant to Fed. R. Civ. P. 56.  Further, plaintiffs filed a cross-motion for summary judgment on Count I.

German Airlines, 875 F.2d 613, 620 (7th Cir. 1989).  "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial."  Beard v. Whitley County REMC, 840 F.2d 405, 410 (7th Cir. 1988).  Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper.

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other.  M. Snower & Co. v. United States, 140 F.2d 367, 369 (7th Cir. 1944).  Rather, each motion evidence only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment.  Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996).

B.     MOTION TO DISMISS STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(1) and (h)(3) authorize the court to dismiss claims for lack of subject matter jurisdiction.  If a plaintiff cannot establish standing to sue, then relief from this court is not possible, and a dismissal under Fed. R. Civ. P. 12(b)(1) is the appropriate disposition.  See American Fed'n of Gov't Employees, Local 2119 v. Cohen, 171 F.3d 460, 465 (7th Cir. 1999).

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for want of standing, the district court must accept as true all material allegations of the complaint, drawing all

reasonable inferences therefrom in the plaintiff's favor. <u>Lee v. City of Chicago</u>, 330 F.3d 456, 468 (7th Cir. 2003) (*citing* <u>Retired Chicago Police Assoc. v. City of Chicago</u>, 76 F.3d 856, 862 (7th Cir.1996, *r'hrng denied, cert. denied*). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing. <u>Retired Chicago Police Assoc.</u>, 76 F.3d at 862 (*citing* <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)). Those elements are (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision. *See* <u>Lujan</u>, 504 U.S. at 560-61. If standing is challenged as a factual matter, the plaintiff must come forward with "competent proof"-that is a showing by a preponderance of the evidence-that standing exists. <u>Retired Chicago Police Assoc., 76</u> F.3d at 862.

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint, and dismissal of an action under the rule is warranted only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>DeWalt v. Carter</u>, 224 F.3d 607, 612 (7th Cir.2000).

In *Cler v. Illinois Educ. Ass'n*, the Seventh Circuit has clearly cautioned courts to consider Fed. R. Civ. P. 12(b)(6) along with Fed. R. Civ. P. 8:

> Working hand in glove with Rule 12(b)(6) is Fed. R. Civ. P. 8, subsection (a) of which requires a plaintiff's complaint to

7

> contain a "short and plain statement" of his claim and the basis
> for federal jurisdiction, and subsection (f) of which instructs the
> courts that "[a]ll pleadings shall be so construed as to do
> substantial justice." Rule 8(a) thus requires only a "short and
> plain statement of the claim that will give the defendant fair
> notice of what the plaintiff's claim is and the grounds upon
> which it rests." *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir.
> 2000).   In this regard, the Supreme Court has cautioned that
> "[t]he Federal Rules reject the approach that pleading is a game
> of skill in which one misstep by counsel may be decisive to the
> outcome and accept the principle that the purpose of pleading is
> to facilitate a proper decision on the merits." *Conley v. Gibson,*
> 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also*
> *Luckett v. Rent-A-Center, Inc.,* 53 F.3d 871, 873 (7th Cir.1995)
> ("District judges must heed the message of Rule 8: the pleading
> stage is not the occasion for technicalities.").

Cler v. Illinois Educ. Ass'n., 423 F.3d 726, 729-30 (7th Cir. 2005).

Therefore, along with the liberal construction given to a complaint, combined with the minimal notice pleading requirements of Rule 8 and this Court's obligation to draw all reasonable inferences in the non-moving party's favor, the Rule 12(b)(6) motion is considered.

Where, however, matters outside the pleadings were presented to and not excluded, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.   Tri-Gen Inc. v. International Union of Operating Engineers, Local 150, AFL-CIO, 433 F.3d 1024, 1029 (7th Cir. 2006) (*citing* Fed.R.Civ.P. 12(b)).   Adequate notice is provided when the moving party frames its motion in the alternative as one for summary judgment. Tri-Gen Inc., 433 F.3d at 1029 (citations omitted).

8

Here, the government defendant's motion was framed in the alternative and adequate notice was provided.   Because this Court considered matters outside the pleadings, all motions ruled on herein are treated as motions for summary judgment.

## III.  DISCUSSION

A.     SUBJECT MATTER JURISDICTION

1.     **Constitutional Standing**

Under Article III of the United States Constitution, before a plaintiff may seek redress in court, he or she must have standing. U.S. Const. art. III.  To have standing, plaintiffs must show three things: (1) injury in fact, (2) causation, and (3) redressability. *See* Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).

Yet, when a case involves procedural rights, the traditional elements of standing are slightly altered.  First, with regard to redressibility, the requirement is lessened. Lujan, 504 U.S. at 573 n. 7. ("[t]he person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy."); Heartwood, Inc. v. U.S. Forest Service, 230 F.3d 947, 952 (7th Cir. 2000) (holding that plaintiffs had standing without addressing redressibility because they had alleged a procedural injury that was connected to a concrete harm).  Second, according to Lujan, the injury requirement in a procedural rights case requires more than merely a procedural harm; instead there must be a concrete harm connected to the procedural

harm. Lujan, 504 U.S. at 571-72.

In the present case, plaintiffs have Article III standing to bring their claims.  They have asserted a concrete harm by claiming that they have suffered an economic injury due to the regulation at issue making it more difficult for member dairy producers to qualify their milk as producer milk (Pl. Br. 117 at 5); see also Family & Children's Cnt'r, Inc. v. School City of Mishawaka, 13 F.3d 1052, 1058 (7th Cir. 1994) (holding that even a minor or non-economic injury will satisfy Article III standing).  Further, under Heart and Lujan, whether or not their alleged harm would be redressed by their prayer for relief is irrelevant since plaintiffs's claims involve procedural rights under the Administrative Procedures Act and the Regulatory Flexibility Act.

2.     **Standing under the Administrative Procedures Act**

Similarly, this court finds that plaintiffs have standing under the Administrative Procedure Act ("APA").  Unlike milk handlers, who are explicitly given standing to challenge Milk Marketing Orders promulgated under the Agriculture Adjustment Act ("AAA"), milk producers must assert standing under the APA.  Specifically, the APA states that a plaintiff has standing to challenge an administrative action (1) when the plaintiff has been, "aggrieved by agency action within the meaning of a relevant statute" and (2) where the statute does not preclude judicial review. 5 U.S.C. §702, 5 U.S.C. §701.

However, under the APA, courts will only find that a statute precludes judicial review "upon a showing of 'clear and convincing evidence' of a contrary legislative intent" that the

10

courts should restrict access to judicial review. <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 141 (1967).  Further, courts will infer the right of judicial review under the APA where congressional intent to protect the interests of the class of which the plaintiff is a member can be found; in such cases, unless members of the protected class may have judicial review the statutory objectives might not be realized. <u>Barlow v. Collins</u>, 397 U.S. 159, 167 (1970).

In 1941, only four years after the passage of the Agriculture Adjustment Act of 1937, the Supreme Court reviewed the legislative history of the AAA. <u>Stark v. Wickard</u>, 321 U.S. 288 (1941); *see also*, <u>Cohens v. Virginia</u>, 19 U.S. 264, 419 (1821) (holding that "great weight has always been attached, and very rightly attached, to contemporaneous exposition").  In *Stark*, the court concluded that the purpose of Milk Marketing Orders promulgated under the AAA is to protect milk farmers-producers.  <u>Stark</u>, 321 U.S. at 306-07; <u>Alto Dairy v. Veneman</u>, 336 F.3d 560, 567 (7th Cir. 2003).  Thus, not only is judicial review of milk marketing orders not prohibited by the AAA, but protecting producers is clearly within the statutory objectives of the scheme.

Further, numerous circuits have held that producers have the right to challenge milk marketing orders under the APA.  *See* <u>Alto Dairy v. Veneman</u>, 336 F.3d at 569; <u>Farmers Union Milk Marketing Coop. v. Yeutter</u>, 930 F.2d 466, 474 (6th Cir. 1991, *r'hrng denied*); <u>Minn. Milk Producers Ass'n v. Madigan</u>, 956 F.2d 816, 818 (8th Cir. 1992).  Accordingly, because plaintiffs are alleging that they have been aggrieved by government defendants' actions and because the AAA does not preclude judicial review as to producers, this court

holds that plaintiffs have standing under the APA to raise their claims against the defendants.

B.    <u>MERITS</u>

Moving onto the merits of the case, the plaintiffs have raised six claims against the USDA each of which will be discussed in turn.

1)    **<u>Pecuniary Interests</u>**

Plaintiffs' first allegation is that the government defendants violated the Administrative Procedures Act and the Due Process Clause of the Fifth Amendment when they allowed Dairy Program employees with a pecuniary interest in the proceeding to participate in the decision making process regarding the promulgation of the regulations at issue in the case. (Pl. Br. 91 at 23-24). The crux of plaintiffs' pecuniary interest argument is that USDA Dairy Program employees have an improper pecuniary interest in pleasing producers because producers could vote to abolish the milk marketing scheme, thus eliminating Dairy Program employees' jobs. (Pl. Br. 84 at 24).

Both the plaintiffs and the government defendants filed motions for summary judgment on the issue, and the intervening defendants filed motions in support of the the government defendants' motion for summery judgment. (Pl Br. 118, 119; Def. Br. 101, 102; Intervening Def. Br. 110, 111, 124; Intervening Def. Br. 113, 114).

Specifically, the defendants argues that they are entitled to summary judgment on the pecuniary interest claim because: (1) plaintiffs are procedurally barred from bringing the

12

pecuniary interest claim because they did not raise the claim by affidavit at the administrative hearing, (2) the pecuniary interest is too indirect and speculative, (3) Dairy Program employees with the alleged pecuniary interest were not the final decision makers in the proceeding, and (4) the proceeding was legislative, not judicial in function, thus holding the government to a lower standard of pecuniary interest. (Def. Br. 102, 3-14).

Having carefully considered the arguments of the plaintiffs, and the defendants, this Court rules as follows.

        a.      Substance of the Pecuniary Interest Claim

Generally, when an adjudicator has a "direct, personal, and substantial pecuniary interest in the outcome of a case," due process is abrogated. <u>Tumey v. Ohio</u>, 273 U.S. 510, 523 (1927). Further, under the APA, "The functions of presiding employees and of employees participating in decisions in accordance with section 557 of this title shall be conducted in an impartial manner." 5 U.S.C. §556(b).  Finally, under the rules governing milk marketing orders, the regulations state that, "No judge who has any pecuniary interest in the outcome of a proceeding shall serve as judge in such proceeding." 7 C.F.R. §900.6(a).

Only a handful of cases deal with persons having a pecuniary interest in issuing milk marketing orders, none of which are directly on point with plaintiffs' allegations. *See e.g.* <u>New York State Dairy Foods, Inc. v. Northeast Dairy Compact Commission</u>, 198 F.3d 1 (1st Cir. 1999, *cert. denied*); <u>Milk Marketing Board v. Johnson</u>, 295 Mich. 644 (1940). Nonetheless, in finding no improper pecuniary interest in *New York State Dairy Foods, Inc.*

13

*v. Northeast Dairy Compact Commission*, the First Circuit Court of Appeals focused on three points, each of which is instructive in analyzing the alleged pecuniary interest at hand. Northeast Dairy, 198 F.3d at 13-14.

First, the court in *Northeast Dairy* indicated that it was more tolerant of pecuniary interests when a commission's functions are legislative rather than judicial. Northeast Dairy, 198 F.3d at 13 (stating that while a plaintiff, "has no constitutional right to be regulated by a board that is sympathetic... he does have a constitutional right to a fair and impartial hearing in any disciplinary proceeding conducted against him by the board." *quoting* Friedman v. Rogers, 440 U.S. 1, 18 (1979; *r'hring denied*)).

Though plaintiffs now argue that the rule-making procedure at issue is judicial, their arguments do not comport with the Seventh Circuit's holding in *Brown v. McGarr*, in which the court held that whether a proceeding qualifies as judicial or legislative depends upon several factors, with a proceeding being more likely to be adjudicative when: (1) the action applies to specific individuals, (2) the proceeding concerns disputed facts, and (3) the action does not determine policy but instead decides a specific dispute. Brown v. McGarr, 774 F.2d 777, 780 (7th Cir. 1985). Instead, according to the factors set forth in *Brown*, the rule-making proceeding at issue here is legislative because (1) it applied to all milk producers within the Northeast Region rather than specific, named individuals, (2) the proceeding concerned general facts regarding the nature of the dairy industry in the mid-east market, rather than disputed facts, and (3) the action's purpose was to determine USDA policy with

14

regard to pooling requirements, not to resolve a specific dispute between litigants. Accordingly, because the rule-making proceeding at issue was legislative, the court will not hold the defendants to the heightened scrutiny that applies to claims of bias in judicial proceedings.

Additionally, *Northeast Dairy* is instructive in indicating what persons could properly serve on a board, stating that, "Industry representation on a regulatory board is a common and accepted practice." Northeast Dairy, 198 F.3d at 13-14; *but see* Gibson v. Berryhill, 411 U.S. 564, 579 (1973) (holding that where a person is subject to a board of adjudicators who are the person's competitor, due process is violated).

Although plaintiffs have not proven that the Dairy Program employees actually wrote and lobbied for the Milk Marketing Order in question, the defendants have filed a motion for summary judgment on the issue.  Therefore, this court will look at the facts in the most favorable light for the non-moving party and will assume that the Dairy Program employees had a decisive role in promulgating the order.  *See e.g.* Smith v. Fruin, 28 F.3d 646, 650 (7th Cir. 1994), *cert denied* 513 U.S. 1083 (1995); Brennan v. Daley, 929 F.2d 346, 348 (7th Cir. 1991).  Yet the Dairy Program employees in question are not plaintiffs' competitors as was the case in *Gibson*.  In fact, they are not even industry representatives, which the *Northeast Dairy* court acknowledged were acceptable persons to serve on regulatory boards.  Thus, the fact that Dairy Program employees participated in the promulgation of a Milk Marketing order does not automatically violate due process.  Instead this Court must look to any

15

underlying interest to determine whether it is improper.

To that end, the *Northeast Dairy* court is instructive in determining when an interest is an improper pecuniary interest such that due process is violated. <u>Northeast Dairy</u>, 198 F.3d at 13 (stating, "Participation of adjudicators who 'might conceivably have had a slight pecuniary interest,' ... does not offend due process." *quoting* <u>Aetna Life Ins. Co. v. Lavoie</u>, 475 U.S. 813, 825 (1986)).

Plaintiffs claim that there is a direct pecuniary interest in this case because the salaries of USDA Dairy Program employees are paid by producers and handlers (Pl. Br. 119 at 15). However, this argument misses the mark--as plaintiffs' own statement of facts points out, producers are charged a fee, which then goes into a pool out of which the Market Administrator pays the salaries of Dairy Program employees (Pl. Br. 118, 13-14). This crucial step ensures that Dairy Program employees do not serve at the pleasure of producers as plaintiffs insinuate, but, instead, Dairy Program employees serve at the pleasure of the Market Administrator who is a USDA employee. The fact that Dairy Program employees' salaries are indirectly paid for by producers does not rise to the level of a "direct substantial pecuniary interest."

Moreover, whether producers would have voted to abolish the entire milk marketing system is merely speculative. Thus, this is not a case where there is such high likelihood that the employees might benefit that they would be subject to temptations. *See* <u>United States v. Mississippi Valley Generating Co.</u>, 364 U.S. 520, 560 (1961, *r'hring denied*) (stating that the

question in ethics cases is, "whether the likelihood that he might benefit was so great that he would be subject to those temptations which the statute seeks to avoid").  Indeed, plaintiffs point to only one instance in the seventy (70) year history of Milk Marketing Orders in which producers threatened to abolish the scheme (Pl. Br. 118 at 19).  Therefore, the claim that Dairy Program employees were influenced to promulgate Milk Marketing orders out of fear that producers would vote to abolish the Milk Marketing scheme is merely speculative and does not rise to the level of the temptation at issue in *Mississippi Valley*.

Thus, because the alleged pecuniary interest depends on the speculative claim that producers would abolish the milk marketing system and on an employment relationship that is indirect at best, any interest Dairy Program employees may have is not a direct pecuniary interest.  Thus, their participation in the promulgation of the Milk Marketing order does not offend due process or the APA.  Accordingly, summary judgment is **GRANTED** in favor of the defendants on count one of the plaintiffs' amended complaint.

b.      Procedural Requirement of the Pecuniary Interest Claim

Though this court has granted summery judgement on the pecuniary interest claim in favor of the defendants on the basis that no such interest exists as a matter of law, the court also finds that plaintiffs still could not prevail on this count because they are procedurally barred from challenging the order due to their failure to file a timely affidavit. *See* 5 U.S.C. §556(b)(3) ("On the filing in good faith of a timely and sufficient affidavit of personal bias or other disqualification of a presiding or participating employee, the agency shall determine

17

the matter as a part of the record and decision in the case").

The relevant facts as described in plaintiffs' brief are not in dispute and are as follows: in February, 2005, the USDA published hearing notices in the *Federal Register* announcing an upcoming hearing in Wooster, Ohio at which the proposed rules at issue in this case would be debated (Pl. Br. 91 at 14). S*ee also* 70 Fed. Reg. 8043 (Feb. 17, 2005); 70 Fed. Reg. 10337 (Mar. 3, 2005).   The hearing notice explicitly stated that employees of the Office of the Market Administrator of the Mideast Milk Marketing Area would be participating in the decision-making process. (Pl. Br. 91 at 14). S*ee also* 70 Fed. Reg. 8043 (Feb. 17, 2005). Plaintiffs actively participated in this hearing, which lasted from March 7, 2005 to March 10, 2005. (Pl. Br. 91 at 14).  Nonetheless, plaintiffs did not allege that Dairy Program employees who work for the Mideast Milk Marketing Area had a pecuniary interest in the proceeding until they sent a letter to the USDA on September 26, 2005, over six (6) months after the administrative proceeding. *Id*. at 17.

Generally, alleged pecuniary interests must be raised as soon as the aggrieved party becomes aware of their existence.  *See* Marcus v. Director, Office of Workers' Compensation Programs, 548 F.2d 1044, 1050-51 (D.C. Cir. 1976) ("[t]he general rule governing disqualification, normally applicable to the federal judiciary and administrative agencies alike, requires that such a claim be raised as soon as practicable after a party has reasonable cause to believe that grounds for disqualification exist").  Thus, by the time plaintiffs first raised the possibility of pecuniary interests in September, 2005, they had already waived their

18

claim by failing to bring it in a timely fashion pursuant to 5 U.S.C. §556(b)(3).

The plaintiffs make several excuses for their failure to abide by the affidavit requirements of 5 U.S.C. §556(b)(3), each of which is unavailing.

First, the plaintiffs point to *Stieberger v. Heckler* in arguing that the affidavit was not necessary in this case because it concerns an alleged systemwide bias (Pl. Br. 119 at 11, 12). Yet, the facts of *Stieberger* are distinguishable from the instant case, because in *Stieberger*, it would have been futile for plaintiffs to raise their claims by affidavit because they were alleging that all ALJs in the system were biased, thus there would be no ALJ who could objectively hear the plaintiff's case. Stieberger v. Heckler, 615 F. Supp. 1315 (S.D.N.Y. 1985; *vacated on other grounds*). However, plaintiffs are only alleging that Dairy Program employees have a pecuniary interest in pleasing producers within their particular district, in this case the Mideast Dairy Program employees. Had plaintiffs raised their pecuniary interest claim by affidavit in February, 2005, when they became aware of the pecuniary interest, the government defendants could have, for example, relied wholly upon Dairy Program employees in their Washington D.C. office who do not work within the system. (Def. Br. 130 at 6); *see also* 70 Fed. Reg. 8043 (Feb. 17, 2005) (stating that Dairy Program employees in the Washington office were among the decision-makers in the instant case). At any rate, unlike *Stieberger*, it would not have been futile for plaintiffs to raise their claims by affidavit.

Additionally, plaintiffs claim that they should be excused from filing the affidavit because they thought that the USDA was going to issue a tentative decision in September

19

rather than a recommended decision (Pl. Br. 119 at 11). Here, as discussed, plaintiffs had already waived their pecuniary interest claim by September, regardless of whether the agency would have issued a tentative or recommended decision, because they should have raised the pecuniary interest claim when they became aware of it in February of 2005. Marcus, 548 F.2d at 1050-51 ("[t]he general rule governing disqualification . . . requires that such a claim be raised as soon as practicable after a party has reasonable cause to believe that grounds for disqualification exist"). Thus, the fact that the government defendants omitted a tentative decision does not excuse plaintiffs from complying with the affidavit requirements of the APA.

Further, plaintiffs rely on *Keating v. Office of Thrift Supervision* in arguing that the affidavit was not necessary in the instant case because the alleged pecuniary interest was already known to the government defendants (Pl. Br. 119 at 10). However, this argument misreads *Keating*, which says nothing about excusing the affidavit requirement when facts regarding a pecuniary interests are a part of the public record.[2] Keating v. Office of Thrift Supervision, 45 F.3d 322, 327 (9th Cir. 1995, *cert. denied*).

---

[2]

This Court is in no way stating that there is a pecuniary interest present in the instant case. *See* Part 2.A (detailing the lack of substance in plaintiffs' pecuniary interest claim). Instead, this Court is pointing out that the plaintiffs have misconstrued *Keating*, which lists the need to "assemble and substantiate" the grounds of the pecuniary interest claim as one of the purposes of the affidavit requirement. Keating, 45 F.3d at 327. The Keating court goes on to list several other reasons for the requirement, including: (1) the need to allow for recusal of interested parties, (2) to ensure that the party alleging pecuniary interest cannot "wait to see the result of the proceeding before substantiating his or her allegations of bias," and (3) the need to foster solemnity in the proceeding. *Id.* Each of these additional reasons suggest that, by holding plaintiffs to the affidavit requirement, this court is fulfilling the purpose behind 5 U.S.C. §556(b)(3).

Moreover, numerous Circuit Court decisions have established the purpose of the affidavit requirement.  *See* <u>Gibson v. Federal Trade Comm'n</u>, 682 F.2d 554, 565 (5th Cir. 1982, *r'hring denied, cert. denied*) (the affidavit "serves not only to focus the facts underlying the charge, but to foster an atmosphere of solemnity commensurate with the gravity of the claim");  <u>Keating</u>, 45 F.3d 322, 327 (9th Cir. 1995, *cert. denied*) (same); <u>Marcus v. Director, Office of Workers' Compensation Programs</u>, 548 F.2d 1044, 1050-51 (D.C. Cir. 1976) (holding that the affidavit encourages efficiency in the administrative process by disallowing plaintiffs from mounting pecuniary interests simply because they do not like the outcome).  If this Court were to excuse plaintiffs' failure to file a timely affidavit pursuant to the A.P.A., it would negate the numerous purposes behind the requirement, by allowing a party to wait until they have received an unfavorable outcome in order to challenge a bias.

Even reading the facts in favor of the plaintiffs, this Court finds that the Plaintiffs are both substantivally and procedurally barred from mounting a pecuniary interest. Accordingly, the defendants are **GRANTED** summary judgment on count one of the amended complaint.

2)    <u>**Violation of the Regulatory Flexibility Act**</u>

Plaintiffs next allege that the government defendants violated the Regulatory Flexibility Act ("RFA") by failing to make a Regulatory Flexibility Analysis, and failing to support its certification with a statement providing the factual basis for the same (Pl. Br 91

21

at 24-25).

Congress originally adopted the RFA in order to "encourage administrative agencies to consider the potential impact of nascent federal regulation on small businesses." Associated Fisheries v. Daley, 127 F.3d 104, 111 (1st Cir. 1997). Specifically, the RFA requires an assessment of the economic and administrative effects a particular administrative action will have on small businesses. 5 U.S.C. § 604(a). However, the RFA goes on to provide an exception to the Regulatory Flexibility Analysis required by § 604(a) by allowing an administrative agency to forgo the analysis by certifying that a rule does not have a significant impact on a substantial number of small entities. 5 U.S.C. § 605(b).

The decision to certify that a rule does not have a significant impact on a substantial number of small entities is not subject to judicial review and is not before this court. 5 U.S.C. § 611(a); *see also* Paul R. Verkuil, *A Critical Guide to the Regulatory Flexibility Act*, 1982 Duke L.J. 213, 259-60 (1982) (describing the non-reviewability provisions of the RFA). Instead, plaintiffs allege that the support the USDA offered for certifying that the regulation would not affect a substantial number of small entities was inadequate. (Pl. Br 91 at 24-25).

The defendants responded by arguing the following: (1) plaintiffs cannot challenge the government defendants under the RFA because they are not subject to the regulation that was being promulgated, (2) the government defendants did not need to make a Regulatory Flexibility Analysis because they certified the issue pursuant to 5 U.S.C. § 605(b), and (3) the government defendants' statements in support for certification were sufficient. (Def. Br.

22

102 at 24-26); *see also* 71 Fed. Reg. 3435.

The defendants point out that plaintiffs cannot challenge the USDA under the RFA because milk marketing orders regulate handlers not producers. (Def. Br. 102 at 25); Lamar Dairy Inc. v. USDA, 379 F.3d 466, 469 (7th Cir. 2004, *cert. denied*) ("Although it protects producers, the AMAA regulates handlers only").  Further, it is undisputed that White Eagle is a cooperative made up of producers and all other plaintiffs are producers.  (Pl. Br. 91 at 2-6).

In support of their first argument, the defendants cite *Cement Kiln Recycling Coalition v. EPA*, a case which held that a plaintiff could not challenge an agency under the RFA because the plaintiff was not "subject to" the particular regulation even though the plaintiff was a target of a regulation. (Def. Br. 102 at 25); Cement Kiln Recycling Coalition v. EPA, 255 F.3d 855, 869 (D.C. Cir, 2001); *see also* Mich. v. EPA, 213 F.3d 663, 697 (D.C. Cir. 2000, *cert. denied*); Motor & Equip. Mfrs. Ass'n. v. Nichols, 142 F.3d 449, 467 (D.C. Cir. 1998); Mid-Tex Elec. Coop. v. FERC, 773 F.2d 327, 342 (D.C. Cir. 1985).

This court recognizes that producers are a beneficiary of milk marketing orders and could even be said to be a target of milk marketing orders. *See* Block v. Community Nutrition Institute, 467 U.S. 340, 342 (1984) (stating that the "essential purpose [of this milk marketing scheme], is to raise producer prices") *quoting* S. Rep. No. 1011, 74th Cong., 1st Sess., 3 (1935).  Were that the extent of the relationship between milk marketing orders and producers, the effect would not be enough to allow plaintiffs to challenge the agency under

23

the RFA.

However, viewing the facts in the light most favorable to the plaintiffs, this court cannot definitively state that producers were not subject to the regulation in question. In fact, the text of the regulation explicitly states, "During March 2005 . . . there were 9,767 dairy producers pooled . . . by the Mideast order." 71 Fed. Reg. 3435. Further, the regulation change states, "Criteria for pooling are established on the basis of performance levels that. . . determine those producers who are eligible to share in the revenue that arises from the classified pricing of milk." *Id.* Thus, even though producers' behavior may not be regulated by the Milk Marketing Order, their eligibility for revenue sharing is. *Id.* Accordingly, despite the Seventh Circuit's statement that "milk marketing orders only regulate handlers" this court declines to hold that plaintiffs were not subject to the regulation such that they could not challenge the government defendants under the RFA. <u>Lamar Dairy Inc. v. USDA</u>, 379 F.3d 466, 469 (7th Cir. 2004, *cert. denied*).

Moving on to the merits of the RFA challenge, the defendants argue that the USDA did not need to make a Regulatory Flexibility Analysis because the agency certified the issue pursuant to 5 U.S.C. § 605(b), and their factual statement in support for certification was sufficient. (Def. Br. 102 at 24-26).

The USDA's certification and support for its certification can be found in the department's Final Partial decision which states in relevant part:

> Criteria for pooling are established without regard to the size of any dairy industry organization or entity. The criteria established are applied in an

identical fashion to both large and small businesses and do not have any different impact on small entities as opposed to large entities. Therefore, the adopted amendments will not have a significant impact on a substantial number of small entities.

71 Fed. Reg. 3435. Thus, pursuant to § 605(b), the agency published such certification in the Federal Register at the time of publication of the final rule, leaving the only remaining question of whether there was an adequate factual basis for such certification. 5 USC § 605(b).

This court's review of whether or not there was "a statement providing the factual basis for such certification" under § 605(b) is a limited one. For example, courts have upheld agency certification even when the certification fails to mention the number of small entities that the rule would affect. *See e.g.* Southwestern Pa. Growth Alliance v. Browner, 121 F.3d 106, 123 (3rd Cir. 1997). Further, the standard of review for agency fact finding is whether there was "substantial evidence" to support a finding. *See* Greater Boston Television Corp. v. FCC, 444 F.2d 841, 850 (D.C. Cir. 1970), *cert denied,* 402 U.S. 1007 (1971); Mattes v. U.S. 721 F.2d 1125, 1128 (7th Cir. 1983) ("The Secretary's findings must be sustained if they are supported by substantial evidence which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

In the instant case, this Court is satisfied that the USDA's certification passes the substantial evidence standard because the USDA stated a factual basis for its certification when it stated that the regulation has no disparate impact on small entities and that this factual basis reasonably supports the agency's conclusion that the amendments will not have

a significant impact on a substantial number of small entities. Thus, because the USDA did not violate the RFA in certifying that the amendment will not have a significant impact on a substantial number of small entities, summary judgement is hereby **GRANTED** to the defendants on count two of plaintiffs' amended complaint

3)    **Emergency Rulemaking**

In its third cause of action, plaintiffs allege that the government defendants' issuance of a final decision on an emergency basis violated section 557(b)(2) of the Administrative Procedure Act ("APA") (Pl. Br. 117 at 8). Plaintiffs vehemently argue that the decision to omit a recommended decision is invalid because (1) it broke with established practice and (2) it was unsupported by evidence (Pl. Br. 117 at 8-19). Yet, plaintiffs have failed to cite any persuasive authority for its arguments. *See* <u>United States v. Berkowitz</u>, 927 F.2d 1376, 1384 (7th Cir. 1991), *cert. denied* (citations omitted) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). Though this court will look at the facts in the light most favorable to the plaintiffs, the non-moving party, this Court does not bear the obligation of researching and constructing the legal arguments on plaintiffs' behalf. *See* <u>Beard v. Whitley County REMC</u>, 840 F.2d 405, 408-09 (7th Cir. 1988).

Both the APA and the rules regulating USDA marketing orders describe circumstances under which an agency may forgo issuing a recommended decision. First, the APA states that a recommended decision may be omitted when "the agency finds on the

26

record that due and timely execution of its functions imperatively and unavoidably so requires." 5 U.S.C. § 557.  Similarly, the rules of practice governing marketing orders states that an agency may omit a recommended decision where "the secretary finds on the basis of the record that due and timely execution of his functions imperatively and unavoidably requires such omission." 7 C.F.R. § 900.12  (d).

Further, the APA sets forth the standard under which agency actions--including the decision to omit a recommended decision--should be evaluated, stating that a reviewing court should set aside an agency action if it is (1) arbitrary and capricious, or (2) unsupported by substantial evidence. 5 U.S.C. § 706.

The Seventh Circuit has interpreted § 706 in such a way that it is very deferential to agencies.  *See e.g.* Pozzie v. U.S. Dep't of Housing and Urban Development, 48 F.3d 1026, 1029 (7th Cir. 1995) (stating that the arbitrary and capricious standard "presumes agency actions are valid as long as the decision is supported by a rational basis"); CAE, Inc. v. Clean Eng'g Inc., 267 F.3d 660 (7th Cir. 2001) (holding that a factual finding satisfies the substantial evidence standard if the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); Mt. Sinai Hosp. Med. Ctr. v. Shalala, 196 F.3d 703, 709 (7th Cir. 1999) (holding that an administrative decision will be upheld so long as "there is a rational relationship between the facts as the [Secretary] finds them and [his] ultimate conclusion").  In short, this Court's "sole task is to determine whether the [agency's] decision was based on a consideration of the relevant factors and whether

27

there has been any clear error of judgment." <u>Pozzie</u>, 48 F.3d at 1029 *quoting* <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 416 (1971).

This Court has carefully considered the argument of the plaintiffs and the defendants and rules as follows: even construing the relevant facts in the light most favorable to the plaintiffs, the defendants are entitled to judgment as a matter of law.

First, it is undisputed that from the time the USDA issued its tentative partial decision, the secretary maintained that "[t]he unwarranted erosion of the blend price stems from . . . the lack of appropriate diversions of milk." 70 Fed. Reg. 43341.  The desire to stop the erosion of the blend price of milk within the Mideast market remains the USDA's justification for the emergency rulemaking. (Def. Br. 128 at 18).  Thus, the USDA's justification for the omission of a recommended decision is not a post-hoc argument as plaintiffs allege. (Pl. Br. 117 at 13).

Further, plaintiffs' argument that the omission of a recommended decision is invalid because it was a deviation from past practice is without warrant.  Even if the decision to omit a recommended decision is a deviation from past USDA practice, plaintiffs have presented no authority suggesting that this deviation is illegal, and thus this court can find no basis for plaintiffs' deviation argument. <u>Beard</u>, 840 F.2d at 408-09.

Finally, plaintiffs' claim that the decision was unsupported by sufficient evidence does not stand up to the standards for reviewing agency fact-finding under § 706 of the APA.  As the D.C. Circuit Court of Appeals recently stated it is not the court's role to determine

28

whether an agency's decision was "'ideal' nor whether it was the most 'appropriate,' but only whether it was 'reasonable'." <u>Allied Local & Regional Mfgs. Caucus v. EPA</u>, 215 F.3d 61, 73 (D.C. Cir. 2000, *cert. denied*).  Here, it is undisputed that numerous witnesses, including Edward Gallagher and others, testified that the state of affairs before the emergency rulemaking was resulting in the reduction of  the blend price of milk within the region (Tr. 234-235, 394, 452-55, Def. Br. 123 at 14-15).  Clearly, the testimony of these individuals presents a rational basis for the agency's decision such that the decision is neither arbitrary and capricious nor unsupported by substantial evidence under § 706 of the APA.

Thus, even construing the facts in the most favorable light to the plaintiffs, the government defendants did not violate the APA or the rules governing marketing orders when it omitted a recommended decision in the present case.  Thus, summary judgment is hereby **GRANTED** to the defendants on count three of the amended complaint.

4)      **Delegation of Authority**

Plaintiffs next allege that the government defendants violated the APA and USDA rules of practice when the Secretary of the USDA delegated the authority to Administrator of the Agriculture Marketing Service to issue a final order (Pl. Br. 91 at 25-26).  Specifically, the plaintiffs cite a 1940 statute which states "[t]here shall not be in the Department at any one time more than two officers or employees designated under this section and vested with a regulatory function or part thereof delegated under this section." 7 U.S.C. § 450(d).  However, the delegation at issue is clearly authorized by 7 U.S.C. § 6912, a 1994 statute

which states in relevant part "the Secretary may delegate to any agency, office, officer, or employee of the Department the authority to perform any function" 7 U.S.C. § 6912(a)(1).

It is undisputed that 7 U.S.C. § 6912 is still good law and that the delegation at issue in the present case fits within the statute's broad allowance of delegation. Further, this court holds that even if the 1940 statute was still controlling, it has not been interpreted to disallow the delegation from the Secretary to administrators. *See e.g.* Freeman v. Fidelity-Philadelphia Trust Co., 248 F. Supp. 487 (E.D. Pa. 1965). Accordingly, because the delegation was authorized by 7 U.S.C. § 6912, summary judgement is hereby **GRANTED** to the defendants on the fourth count of the plaintiffs' amended complaint.

5)   **Violation of the AMAA**

Plaintiffs next allege that the government defendants violated the AMAA when they considered the classification of milk as a condition for eligibility to receive the market blend price. (Pl. Br. 91 at 26). Specifically, in this case the USDA considered the end use of milk as a consideration in determining which dairy farmers are eligible for a particular pool under the milk marketing order. *Id.*

Plaintiffs correctly point out that the AMAA guarantees that prices "for milk purchased from producers ... shall be uniform as to all handlers." 7 U.S.C. §608c(5)(A). However, as the Seventh Circuit pointed out in *County Line Cheese Co. v. Lying*, non-pooled milk does  not qualify as milk purchased from producers. County Line Cheese Co. v. Lying, 823 F.2d 1127, 1135 (7th Cir. 1987); *see also* 7 U.S.C. §608c(5)(B)(ii)(f)(iii) (differentiating

between "producers" and "dairy farmers not delivering milk to producers").  Thus, plaintiffs' argument that the purpose of the milk marketing system is to ensure price uniformity, fails to recognize that the system only ensures price uniformity to all milk within a specific pool.  *See* County Line, 823 F.2d at 1135 (stating "non-pool milk is not subject to the minimum price requirement and the requirement of uniformity").

Moreover, the regulation at issue does not differentiate the prices that farmers in a particular pool will receive according to the type of milk they produce.  Accordingly, because the AMAA does not prohibit differentiating between those producers who are eligible for a specific pool and those who are not, summary judgement is **GRANTED** in favor of the defendants on count five of the plaintiffs' amended complaint.

   6)   **Agency Conclusions under §557 of the APA**

Finally, plaintiffs allege that the government defendants violated  §557 of the APA by failing to  consider all relevant factors, thus rendering its final partial decision arbitrary and capricious (Pl. Br. 91 at 27).  Section 557(c) of the APA requires an agencies decision to include "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. §557(c).

This Court's review of an agency decision is a limited one, with decisions being set aside only if they are "arbitrary and capricious, an abuse of discretion, or otherwise not in accord with the law." 5 U.S.C. §706(2).  Further a court is not permitted to reweigh the evidence or to substitute its own judgment for that of the agency. Howard Young Med.

Center, Inc. v. Shalala, 207 F.3d 437, 441 (7th Cir. 2000, r'hrng denied).  If a reviewing court can discern what the [Department] did and why [the Department] did it, the duty of explanation is satisfied" Piney Mt. Coal Co. v. Mays, 176 F.3d 753, 762 (4th Cir. 1999); see also Bagdonas v. Dep't of Treasury, 93 F.3d 422, 426 (7th Cir. 1996) (stating that while the court has a duty to uphold agency decisions "of less than ideal clarity" the court cannot substitute a rational basis for agency action when one was not given).

In the present case, the government defendants clearly had a reasonable basis for its decision: it is clear from the plain language of the regulation at issue in this case that the agency promulgated the rule to stop the erosion of the blend price of milk.  As was previously established in count three, supra, the agency reasonably relied upon witnesses in considering the regulation.

Though plaintiffs argue that the agency's specific findings of fact as to their particular organization are insufficient, the government defendants properly explained why they disagreed (Pl. Br. 117 at 23); see also 71 Fed. Reg. at 3440 (stating that plaintiffs' argument's "are not persuasive").

Further, plaintiffs argue that the Department failed to consider each of its arguments, yet plaintiffs can point to no authority stating that an agency has to address every argument every witness makes.  Indeed, "existing law does not require that an agency make an explicit response to every argument made by a party, but instead requires that issues material to the agency's determination be discussed so that the agency's path may reasonably be discerned

by a reviewing court" <u>Carribbean ISPAT Ltd. v. U.S.</u>, 366 F. Supp. 2d 1300, 1307 (Ct. Int'l Trd. 2005) (*overturned on other grounds*).

This Court concludes that the USDA's reasoning rises to the level required by *Bagdonas* and *Howard* in providing enough of an explanation of the agency's grounds that this Court can reasonably discern what the USDA did and why the decision was not an abuse of discretion. Further, the USDA's failure to address the nuances of plaintiffs' argument does not render the agency's decision arbitrary and capricious. Accordingly, because the agency's decision was not arbitrary and capricious in violation of the APA, summary judgement is **GRANTED** to the defendants on count six of the plaintiffs' amended complaint.

## IV. CONCLUSION

Based on the foregoing analysis, this Court has held as a matter of law that, although plaintiffs have standing, no claim in plaintiffs' amended complaint can survive summary judgment. As such, defendant's motions (Docket Nos. 101, 110, and 113) are **GRANTED** and plaintiffs' motion (Docket No. 118) is **DENIED**. This case is considered closed, and the Clerk of the Court shall enter judgment in favor of the defendants and against the plaintiffs. Each party will bear its own costs.

**SO ORDERED.**

**DATED: August 21, 2007**

S/ ALLEN SHARP
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**